MATTHEW A. RICHARDS (SBN 233166)
mrichards@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, CA 94111-3600
Tel: 415-984-8200
Fax: 415-984-8300

BROCK SERAPHIN (SBN 307041)
bseraphin@nixonpeabody.com
NIXON PEABODY LLP
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Tel: 213-629-6000
Fax: 213-629-6001

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO
BAY AREA

JORDAN WELLS (SBN 326491)
jwells@lccrsf.org
VICTORIA PETTY (SBN 338689)
vpetty@lccrsf.org
131 Steuart Street # 400
San Francisco, CA 94105
Telephone: 415 543 9444

*Attorneys for Plaintiff*

PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
CHRISTOPHER F. JEU (CABN 247865)
Assistant United States Attorney
60 Market Street, Suite 1200
San Jose, California 95113
Telephone: (408) 535-5082
FAX: (408) 535-5066
Christopher.Jeu@usdoj.gov

Attorneys for Federal Defendants
DEPARTMENT OF HOMELAND
SECURITY and U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCSICO BAY AREA,<br><br>Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF HOMELAND SECURITY and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Defendants. | Case No. 3:24-cv-09330-TSH<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:   Hon. Thomas S. Hixson<br>Date:    May 29, 2025 (Dkt. No. 20)<br>Time:    10:00 A.M.<br>Dept.:   Courtroom E, 15th Floor<br><br>Action Filed: December 23, 2024 |

The Parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9.

**1.     Jurisdiction & Service:** In this FOIA and Administrative Procedure Act case, this Court has subject matter jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. §§ 701-706 and 28 U.S.C. § 1331. Venue in this district is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1)(C) in that Plaintiff LCCRSF is headquartered and has an office in San Francisco, California. Defendants have been served. For instance, the U.S. Attorney's Office was served on January 6, 2025.

**2.     Facts:**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of records in the possession of the United States Immigration and Customs Enforcement agency ("ICE"), a branch of the Department of Homeland Security ("DHS"), concerning the treatment of civil immigration detainees detained by ICE at Golden State Annex ICE Detention Facility ("GSA"), a for-profit contract detention center operated by The GEO Group, Inc. ("GEO").

On June 26, 2024, LCCRSF submitted a FOIA request letter to ICE ("FOIA Request") seeking 18 categories of records pertaining to, *inter alia*: (1) complaints by detainees housed in GSA Housing Unit A4 between January 1, 2024 and June 1, 2024 regarding access to basic necessities; (2) records regarding the use of force by GSA between 11:59 p.m. April 8, 2024 and 12:01 a.m. April 16, 2024; (3) records related to alleged GSA staff misconduct between April 8, 2024 and April 16, 2024, concerning, *e.g.,* the use of force; (4) documents relating to any search for contraband between 11:59 p.m. April 1, 2024 and 12:01 a.m. April 16, 2024, including investigations prior to any search for contraband; and (5) GSA's policies and procedures regarding, *e.g.,* handling contraband.  In addition to written records, the Request sought (6) audio and video footage from 11:59pm April 8, 2024 to 12:01am April 16, 2024, *e.g.*, from the interior of and from the exterior of Housing Unit A4.  *See generally* Dkt. No. 1-1 at 2-7 (Pl.'s FOIA Request).

On July 9, 2024, ICE acknowledged receipt of LCCRSF's FOIA request and denied its request for expedited processing. *See* Dkt. No. 1-1 at 9-11 (ICE FOIA Office, Response dated July 9, 2024). From July 2024 through September 2024, LCCRSF exchanged correspondence with ICE and appealed ICE's denial of its request for expedited processing. *See* Dkt. No. 1-1 at 13-54. On September 30, 2024, ICE affirmed its prior decision to deny expedited processing of the FOIA request. *See* Dkt. No. 1-1 at 56-62.

On November 4, 2024, LCCRSF sent a letter to ICE requesting information about the processing status of the FOIA Request. *See* Dkt. No. 1-1 at 64-80. On November 7, 2024, ICE responded stating that "the search for responsive documents is complete and your request is currently in queue to be processed." *See* Dkt. No. 1-1 at 82-83. On December 10, 2024, LCCRSF sent a final demand to ICE for a response to its FOIA request and requested that ICE begin its production of records on or before December 20, 2024. *See* Dkt. No. 1-1 at 85. On December 23, 2024, Plaintiff filed suit.

Since the filing of suit, the Parties have had extensive discussions about the FOIA requests. The Agency informed Plaintiff that (1) it has been processing documents (est. 500 pages+ per month) and (2) that it agrees to make monthly productions of documents. In addition, the Agency informed Plaintiff about its substantial resource limitations, including with respect to processing video footage.

On May 16, 2025, ICE issued its first interim release. The Agency reviewed 732 pages, which contained 327 pages of non-responsive or duplicative documents and 404 pages that required review by GEO. One page was released in full- an excerpt from ICE's Performance Based National Detention Standards ("PBNDS") that is available to the public online.[1] While the Agency had previously provided Plaintiff with the link to this document in full during talks, the excerpt was returned in the FOIA search and, as a result, was reviewed and processed as required.

**3.     Legal Issues:** The primary legal issue in this action pertains to the Parties' respective positions regarding application of FOIA.

---

[1] https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf

*Plaintiff's Statement:*

As of the date of this filing, almost a year has passed since LCCRSF made the Request. The Parties remain in the early stages of defining the scope of ICE's search and review of certain categories of requested records. Only a single-page document already known to LCCRSF has been produced to date. To facilitate continued negotiation between the Parties and ICE's prompt records disclosure, the Parties would benefit from the Court's guidance on at least two issues.

First, the scope and timing of ICE's production of audio/video files remains unclear. Of the eight days of video footage requested, ICE claims possession of only five hours of audio/video footage from a single day, April 15, 2025. ICE's primary justification is that the relevant National Archives and Records Administration ("NARA") records retention schedule required GEO to destroy the remaining footage within 60 days of its recording. Contradictorily, GEO declared in pending litigation that it retains video footage at another California ICE contract facility for at least 90 days. It remains unresolved whether GEO was in actual possession of a wider timeframe of video footage at the time of LCCRSF's June 26 Request letter.[2] Despite the fact that the video files that ICE is reviewing comprise less than one-eighth of the footage sought by the Request, ICE has asked LCCRSF to narrow its request to certain subject matter to facilitate faster processing. Producing even 15 minutes of video footage per month, according to ICE, would be difficult. ICE has not committed to a timeline on which LCCRSF can expect video production to begin. Though the Parties are negotiating the video production issue in good faith, LCCRSF believes that the Court can help define GEO's obligations to have transferred video files to ICE and a reasonable timeline for production.

Second, there are yet no deadlines by which Defendants must conclude their assessment of GEO's exemption claims, or even what that process entails. ICE represents that 404 pages of responsive records required a "submitter's notice" to GEO, pursuant to which GEO may object to

---

[2] LCCRSF's position is that any footage in GEO's actual possession at the time of the Request is subject to FOIA, even if the NARA schedule only requires a 60-day retention policy. Further, LCCRSF maintains that the footage requested was not subject to the 60-day policy, which only covers "[v]ideo/audio recordings . . . determined to have no evidentiary value."

disclosure under FOIA Exemption 4's protection of "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." *See* 6 C.F.R. § 5.7(c), (e). ICE must give GEO a response deadline of "no fewer than 10 working days," and GEO's response "should provide the [agency] component a detailed written statement that specifies all grounds for withholding the particular information under any exemption of the FOIA[.]" *Id*. at § 5.7(e)(1). Following GEO's response, DHS and ICE "shall consider a submitter's objections and specific grounds for nondisclosure in deciding whether to disclose the requested information." *Id*. at § 5.7(f). The regulations are silent on whether DHS and ICE may continue to engage with GEO on their requests for redactions or withholdings beyond the response deadline, or to what extent DHS and ICE limit further input from GEO. Nor has ICE informed LCCRSF of the response deadline given to GEO. Given that internal negotiation of GEO's potential FOIA Exemption 4 claims may indefinitely hold up records production, LCCRSF seeks more concrete deadlines from the Court for the conclusion of this process.

*Defendants' Statement*:

Defendants have sought to work cooperatively with Plaintiff, seeking to minimize disputes. For instance, (1) the Agency has been processing documents (est. 500 pages+ per month); (2) it has agreed to make monthly document productions; and (3) it has been conferring with Plaintiff about additional topics, such as video footage.

The Agency's searches resulted in 1,359 pages of potentially responsive documentary records. The Parties agreed to a review rate of at least 500 pages per month, starting in May 2025. The Agency stated that it aims to review all documentary records by June 16, 2025. The Agency was forthcoming about its obligation to submit certain documents to The GEO Group for submitter's notice and explained this process to Plaintiffs at the outset. The Agency expressed hope that all documents submitted to the GEO Group would be released with appropriate withholdings by July 15, 2025. Due to the nature of submitter's notice, this could not be guaranteed but the Agency is proceeding in good faith towards this goal.

On May 16, 2025, ICE released its first interim production. The Agency reviewed 732 pages of potentially responsive documents, well above the 500-page minimum agreed. The Agency was

obligated to send 404 pages to The GEO Group for submitter's notice. The GEO Group has until June 3, 2025 to submit its comments and requested withholdings to ICE. Once received, ICE will review the requested withholdings for legal sufficiency. If ICE disagrees with any of the withholdings requested, the Agency will engage with The GEO Group regarding those specific records at issue. Any records for which there is no disagreement will be released with the Agency's June interim production.[3] While the Agency understands Plaintiff's concern about the size of the May 2025 production, the Agency expects subsequent production(s) to be more robust.

With respect to Plaintiff's concerns about video footage, the Agency has been working diligently on the video issues, including (1) to identify the applicable policies regarding the preservation of video footage and (2) to work cooperatively with Plaintiff on the processing of video footage, including (a) to discuss the Agency's technical limitations and (b) narrow the Plaintiffs request for video footage.

With respect to the (1) policies regarding video footage, the Agency has already shared with Plaintiff the applicable and publicly available NARA Records Retention Schedule, as discussed above. Contrary to Plaintiff's claim, the schedule does not require destruction of non-evidentiary video after 60 days. Nor does the NARA Records Retention Schedule require the retention of video past this timeframe. Here, the Agency understands that Plaintiff's July 2, 2024 letter to the Geo Group[4] sought video footage for the April 15, 2024 search. Accordingly, the CCTV footage not related to the April 15, 2024 search of the A4 dorm was apparently overwritten prior to the search.

As to the Agency's processing of video footage, due to resource limitations – including technical constraints (*e.g.*, software license limits), the volume of FOIA matters, and staffing resource limitations – the Agency's typical processing rate is five (5) minutes per month. The Agency asked Plaintiff to narrow its request for video footage given these restraints. Plaintiff responded that it would want to review the Agency's responsive documents before taking a position

---

[3] The Agency intends to review the remaining 625 pages of potentially responsive documentary records for its June 2025 release, and the submitter's notice process will be repeated, if necessary.

[4] The undersigned Defense counsel and Agency counsel have not received a copy of Plaintiff's July 2, 2024 letter.

regarding the narrowing of video footage. Thus, the Agency is working diligently to release all responsive documentary records as quickly as possible so that Plaintiff can review and re-engage with the Agency regarding the request for video footage.

In view of the relatively early posture and the Agency's good faith efforts thus far, it is premature to set Court deadlines for these projects.  The Court should give the Parties additional time, so that the Agency may produce additional documents, including video footage policy materials; and so the Parties may continue working cooperatively on document and video issues.

**4.     Motions:**

The Parties are still endeavoring to resolve this Action through negotiation. Though motion practice is not anticipated at this time, DHS and ICE have not produced records sufficient to make a long-term forecast, especially regarding any potential disputes over whether FOIA exemptions permit redactions and withholdings. LCCRSF thus reserves all rights.

**5.     Amendment of Pleadings:** The Parties do not anticipate any amendments to the pleadings but reserve all rights.

**6.     Evidence Preservation:** The Parties have reviewed the ESI Guidelines. The Parties have met and conferred regarding reasonable steps taken to preserve relevant evidence.

Plaintiff's Statement: At this time, Defendants have not confirmed whether DHS, ICE and GEO undertook efforts to preserve evidence upon receipt of LCCRSF's FOIA request. Specifically, and as set forth above, LCCRSF has reason to believe that GEO may have had video evidence responsive to LCCRSF's FOIA request at the time the request was made, but Defendants have not confirmed that a litigation hold notice was issued to ensure the preservation of such video evidence.

Defendants' Statement:  The Agency has taken reasonable steps to preserve relevant evidence. Reasonable searches were conducted for potentially responsive records, and those records were transferred to the ICE FOIA office for processing. Even so, Defendant understands Plaintiff served a records retention request on The GEO Group, which was received on July 2, 2024. The Agency currently understands that the letter requested retention of video footage from

the April 15, 2024 search, but did not reference the entire April 8 to 16, 2024 time frame. Defendant's understanding is that on July 8, 2024, The GEO Group issued a formal litigation hold.

7. **Disclosures:** Counsel for ICE has informed LCCRSF that FOIA requests are not governed by Fed. R. Civ. P. 26(f). *See, e.g., Lenahan v. U.S. Dep't of Health and Human Servs.*, Case No. 23-cv-06041-TSH, Dkt. No. 12 (N.D. Cal. Jan. 31, 2024) (order exempting parties from initial disclosure requirements).

8. **Discovery:** No discovery has taken place to date. The Parties are meeting and conferring to limit the categories in dispute and the scope and timeline for ICE's production of information responsive to LCCRSF's FOIA Request. The Parties do not anticipate discovery will be necessary in this action and expect any unresolved issues concerning ICE's production will be resolved by the Court and/or the stipulated ADR process. However, LCCRSF reserves all rights.

9. **Class Actions:** Not applicable.

10. **Related Cases:** Not applicable.

11. **Relief:** The Parties anticipate resolving most of LCCRSF's FOIA Request through informal negotiations. To the extent a mutually agreeable resolution is not reached as to any specific categories in the FOIA Request, LCCRSF seeks declaratory and injunctive relief regarding outstanding categories in its FOIA Request. Separately, LCCRSF seeks its reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412.

12. **Settlement and ADR:** The Parties have stipulated to Early Neutral Evaluation.

13. **Other References:** Not applicable.

14. **Narrowing of Issues:** The Parties are meeting and conferring to narrow the issues in dispute concerning LCCRSF's FOIA Request. The Parties anticipate that LCCRSF's Request Nos. 3-6, concerning video recordings will be the most contested issue in dispute. *See* Dkt. No. 1-1 at 3 (Pl.'s FOIA Request, Topics 3–6).

15. **Scheduling:** Not applicable

16. **Trial:** Not applicable.

17. **Disclosure of Non-party Interested Entities or Persons**:

   Plaintiff: Not applicable.

<u>Defendants</u>:  Under Civil Local Rule 3-15, the disclosure requirement does not apply to governmental entities.

**18.**     **Professional Conduct:** All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**19.**     **Other:** The Parties are meeting and conferring to identify non-objectionable categories for production and to narrow the issues in dispute.

Dated: May 22, 2025                                 Respectfully submitted,

                                                                    NIXON PEABODY LLP


                                                                    By: */s/ Brock J. Seraphim*
                                                                           Matthew A. Richards
                                                                           Brock J. Seraphin
                                                                           *Attorneys for Plaintiff*

Dated: May 22, 2025                                 PATRICK D. ROBBINS
                                                                    Acting United States Attorney


                                                                    By:  */s/ Christopher F. Jeu*[5]
                                                                           Christopher Jeu
                                                                           Assistant United States Attorney


                                                                           Attorneys for Federal Defendants
                                                                           Department of Homeland Security and
                                                                           U.S. Immigration and Customs
                                                                           Enforcement

---

[5] In compliance with Civil Local Rule 5-1(i), the filer of this document attests under penalty of perjury that counsel for Federal Defendants has concurred in the filing of this document.